UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOSEPH DIMINO,

                                         Plaintiff,

        -against-

HSBC BANK, USA N.A.,

                                    Defendant.

11 Civ. 4189 (HB)

**OPINION AND ORDER**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

      Before the Court is a motion for summary judgment brought by Defendant HSBC Bank, USA N.A. ("HSBC"). Relying on this Court's diversity jurisdiction, Plaintiff Joseph Dimino ("Dimino") asserts claims of gender discrimination in violation of New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.* and New York City Human Rights Law ("NYCHRL"), Admin. Code §§ 8-101 *et seq.*, retaliation in violation of NYSHRL, N.Y. Exec. Law § 296 and NYCHRL, Admin. Code §§ 8-107(c) and 15(a), and breach of an implied-in-law contract. For the reasons set forth below, HSBC's motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND[1]

      Dimino began his employment with HSBC in June of 2006 as a sales assistant. HSBC 56.1 ¶ 1; Dimino 56.1 ¶ 1. In July 2007, Dimino applied for and was accepted into the Retail Management Trainee ("RMT") program. HSBC 56.1 ¶ 2; Dimino 56.1 ¶ 2. Dimino completed the RMT program in June 2008. HSBC 56.1 ¶ 10; Dimino 56.1 ¶ 10. After the RMT program, Dimino was not given a management position, but was assigned a temporary position on the At-Risk team. HSBC 56.1 ¶ 39. In November 2008, Dimino completed this assignment and was assigned to the 42nd Street HSBC Branch in Manhattan, ultimately serving as a Business Relationship Banker ("BRB") according to HSBC. HSBC 56.1 ¶¶ 45-55. Dimino alleges that the failure to place him in a management position after he completed the RMT program was due to gender discrimination in violation of NYSHRL and NYCHRL. Compl. ¶¶ 12-15. HSBC

---

[1] This section is intended for background purposes. Additional facts are discussed where they are relevant.

1

responds that Dimino was not treated differently than the other members of the RMT program, that he had a poor attitude and that he was disruptive throughout the program. HSBC 56.1 ¶¶ 13, 37-46.

In July 2009, one of Dimino's supervisors met with Dimino and informed him that the performance objectives section of his 2009 performance review had not been completed and needed to be completed. HSBC 56.1 ¶ 59; Dimino 56.1 ¶ 59. Dimino objected to the BRB position listed on his performance objectives and refused to sign the objectives. HSBC 56.1 ¶¶ 74-88; Dimino 56.1 ¶¶ 74-88. Dimino asserts that HSBC breached an implied-in-law contract by asking him to sign his performance objectives, which he believed was unethical. Compl. ¶¶ 20-21. HSBC asserts that there is no such cause of action. HSBC Mem. 25.

Dimino filed a lawsuit in New York County State Supreme Court in September 2009 accusing HSBC of gender discrimination. Dimino Opp. 12. In January 2010, Peter Hutter ("Hutter") of HSBC's Human Resources Department, gave Dimino until January 18, 2010 to accept his performance objectives and asked him to stop making negative comments about his on-going legal action. HSBC 56.1 Ex. T, 1/18/2010 Email from Hutter to Dimino. HSBC terminated Dimino on January 25, 2010. HSBC 56.1 ¶ 103. Dimino alleges that this termination was in retaliation for filing his gender discrimination suit in New York State Court. Compl. ¶¶ 16-19. HSBC argues that the termination was a lawful response to Dimino's refusal to accept his performance objectives and his disruptive behavior. HSBC 56.1 ¶ 103.

## II. DISCUSSION

**A. Legal Standard**

Summary judgment shall be granted in favor of a movant where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must resolve all ambiguities and draw all inferences against the moving party. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A material fact "might affect the outcome of the suit under the governing law," and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (internal citation omitted). "The party against whom summary judgment is sought . . . 'must do more than simply show that there is some

metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is *a genuine issue for trial*.' " *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## B. Discrimination Claims

Claims of gender discrimination under NYSHRL and NYCHRL are analyzed under the three-step burden-shifting analysis for Title VII claims established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000).

### 1. P*rima Facie* Case

Establishment of a *prima facie* case of discrimination, while a low hurdle for plaintiffs does require some showing that: (1) plaintiff is a member of a protected class; (2) plaintiff is qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *McDonnell*, 411 U.S. at 802. There is no dispute that Dimino is a member of a protected class (males). There are disputed issues of fact as to each of the other factors necessary to make out a *prima facie* case.[2]

First, there is a genuine issue of material fact regarding whether Dimino was qualified for a managerial position. Dimino presents evidence suggesting that he was qualified, including evidence that midway through the program, he was ranked No. 1 in the Downstate RMT class, Dimino 56.1 Ex. 8, 1/11/2008 Rankings Email, which was based on his course exams and his rotation evaluations. Dimino 56.1 Ex. 45, Boykin Tr. 105:25-106:6. Dimino also offers several examples of positive feedback and evaluations from his supervisors at HSBC. *See, e.g.*, HSBC 56.1 Ex. OO, Performance Evaluation (referring to Dimino as a "Team player" who was "flexible, willing to work outside of his rotation"); Dimino 56.1 Ex. 12, 1/30/2008 Elko Email (noting that plaintiff had strong relationships with clients, was diligent with paperwork, had a good knowledge of internal policies and displayed good initiative on how the department could

---

[2] *Bennett v. Health Management Sys., Inc.*, 936 N.Y.S.2d 112, 120 (App. Div. 2011), indicates that in a case like this, where the *prima facie* case is essentially admitted by HSBC, courts can skip to the crux of the question under the NYCHRL, which is whether the plaintiff has provided evidence of pretext. Because the NYSHRL still requires this burden-shifting analysis, however, I first consider whether Dimino provides evidence to support a *prima facie* case. *See Hunter v. Police Athletic League, Inc.*, 09 Civ. 997, 2011 WL 1203065, at *10 (S.D.N.Y. Mar. 23, 2011). (discrimination and retaliation claims brought under the NYSHRL are examined identically to those under Title VII).

run more effectively); Dimino 56.1 Ex. 22, 5/16/2008 RMT Trainee Evaluation Worksheet (rating Dimino a level 3 for "[c]onsistently achiev[ing] the performance level required by the Business"). HSBC puts forth evidence that Dimino was not qualified for a managerial position. *See* HSBC 56.1 Ex. N, 11/2007-2/2008 Performance Discussions (describing performance discussions about Dimino indicating that his attitude was "very poor"); HSBC 56.1 Ex. OO, Performance Evaluation ("Joe was exhibiting negative attitudes regarding his position in the Bank, and was sharing this with several colleagues in the branch."); HSBC 56.1 Ex. V, 2/8/2008 Costanza Email (describing Dimino's "disappointing" final presentation, which said it was "awful" to work at HSBC and made "very negative comments regarding the company").

There is also a genuine issue of material fact as to whether Dimino suffered an adverse employment action. Dimino argues that he was subject to an adverse employment action because he was not given a management position after his participation in the RMT Program. Dimino 56.1 Ex. 31, 8/13/2009 Dimino Letter. HSBC responds that the RMT Program did not guarantee that Dimino would become a manager. HSBC 56.1, Ex. L, RMT Job Description.

Finally, the circumstances give rise to an inference of discrimination. There were 16 RMTs in the program with Dimino, 9 females and 7 males. HSBC 56.1 ¶ 37.[3] According to an email circulated in January 2008, the top 3 performers in the RMT Program were male, and Dimino was ranked number 2 overall and number 1 of the Downstate RMTs. Dimino 56.1 Ex. 8, 1/11/2008 Rankings Email. Of the bank's six highest overall New York performers, four were men and two were women. *Id.* After graduation, four of the RMT program graduates were given managerial or leadership positions. Dimino 56.1 Ex. 38, Placement Data. All of these employees were women. *Id.*

### 2. HSBC Provides a Legitimate, Non-Discriminatory Explanation

Once a plaintiff makes out a *prima facie* case, the burden of going forward shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. HSBC offers a legitimate, non-discriminatory reason for its failure to "promote" Dimino after completion of the RMT program based on "his excessive negativity, unprofessionalism, insubordination, and unwillingness to modify his behavior despite counseling." Def. MSJ 15; *see Neratko v. Frank*, 31 F. Supp. 2d 270, 284-85 (W.D.N.Y. 1998) (finding that plaintiff's offensive

---

[3] Dimino states that there were only eight women; however, the Placement Data indicates that HSBC is correct that there were nine women. HSBC 56.1 Ex. Z, Placement Data.

conduct and attitude towards management qualified as legitimate, non-discriminatory reasons for the adverse action); *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 124-25 (App. Div. 2011) (concluding defendant had provided a legitimate, non-discriminatory reason for adverse action where defendant presented credible evidence of plaintiff's unsatisfactory work performance).

### 3. There is a Genuine Issue of Material Fact as to Whether Dimino Established Pretext

Once the defendant presents a legitimate non-discriminatory reason for the adverse employment action, the burden is then on the plaintiff to establish that the proffered reasons are pretextual.  There is a genuine issue of disputed fact regarding whether HSBC's stated reasons for failing to promote Dimino—his poor attitude—are pretextual and were really an effort to hide HSBC's gender discrimination.   Dimino indicates that he was never counseled about his allegedly poor behavior during the RMT program and that Boykin's notes, which allude to a guest speaker who allegedly complained about Plaintiff's negativity do not provide the name of that speaker "nor the specifics of that incident." Pl. Opp. 18.  Dimino also presents evidence suggesting that he was complimented repeatedly. *See supra* pp. 3-4.  Further, although Defendant offers a legitimate, non-discriminatory reason why it failed to promote Dimino to a management position, HSBC offers no explanation for why none of the four males who were ranked among the top six RMT graduates was assigned to managerial roles. Pl. Opp. 16.

HSBC responds that the rankings at the RMT program were based solely on exam scores, rather than performance evaluations. HSBC 56.1 Ex. 45, Boykin Tr. 80:22-81:12.  However, Boykin's testimony later at her deposition indicates that rotation evaluations also played a part in the rankings. *See id.* at 105:25-106:6 ("Q: It wasn't just exam scores, it was a combination of exam scores as well as rotation evaluations; am I correct? A. Correct.").  HSBC also states that Dimino was counseled about his poor behavior contemporaneously, and that he admitted to this in his deposition. Def. Reply 7; s*ee* Dimino Dep. Vol. I at 111:10-16, 112:21-113:8, 14-16 (acknowledging that at a February 21, 2008 meeting his supervisor "mentioned [to him] that [his] peers were complaining" about him and cited "unprofessional behavior"); *id.* Vol. I at 117:2-119:3 (noting that a trainer was "enraged" by Dimino's inappropriate final presentation).

A reasonable jury could conclude that "the adverse action taken against [defendant] was more likely than not a product of discriminatory animus." *Leibovitz v. Cornell Univ.*, 584 F.3d 487, 498-99 (2d Cir. 2009). "Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 134 (2000). The court considers "the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is entitled to view the evidence as a whole." *Green v. Harris Pubs., Inc.*, 331 F. Supp. 2d 180, 188 (S.D.N.Y. 2004) (internal quotation and citation omitted). Dimino provides evidence, albeit weak evidence, from which a jury might find that he was not promoted due to gender discrimination: he was among the top performers in HSBC's own midterm rankings, he was praised several times throughout the RMT program, and only females were given management positions. There is a genuine issue of material fact as to whether Dimino has established pretext. Summary judgment must be denied on Dimino's claims of gender discrimination under NYSHRL and NYCHRL.

## C. Retaliation Claims

The three-step burden-shifting analysis also applies to retaliation claims brought under NYSHRL and NYCHRL. Dimino asserts that he was terminated because he filed a gender discrimination lawsuit in state court.

### 1. *Prima Facie* Case for Retaliation

To establish a *prima facie* case of retaliation, Dimino must show that (1) he engaged in protected activity, (2) HSBC was aware of this activity, (3) HSBC took adverse employment action against him, and (4) a causal connection exists between the alleged adverse action and the protected activity. *Treglia v. Town of Malius*, 313 F.3d 713, 719 (2d Cir. 2002). Filing a gender-discrimination suit is clearly a protected activity and HSBC was aware of the lawsuit. That Dimino was fired is an adverse employment action.

Dimino has likely met his minimal burden of showing a causal connection between his termination and the filing of his gender discrimination suit. "A close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action is alone sufficient to establish causation, without direct evidence in support." *Parrish v. Sollecito*, 258 F. Supp. 2d 264, 268 (S.D.N.Y. 2003). Where temporal proximity is the sole basis for establishing causation, the protected activity and the adverse action must be very close. *Clark*

*County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *Garrett v. Garden City Hotel, Inc.*, No. 05 Civ. 0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation."). Here there were several months between the filing of the suit and Dimino's termination. "However, where there is direct evidence concerning the causal relationship, the standard concerning proximity is relaxed." *Parrish*, 258 F. Supp. 2d at 268. In this case, Dimino also presents evidence suggesting that his lawsuit played a part in his termination. HSBC 56.1 Ex. T, 1/18/2010 Hutter Email to Dimino (indicating that Hutter had received feedback about Dimino's negative comments "regarding the company and your ongoing legal action in your branch"). This suggests that Dimino's gender discrimination lawsuit was sufficiently related to his termination to satisfy the *prima facie* case requirement.

### 2.  HSBC Provides a Legitimate, Non-Discriminatory Explanation

Once a plaintiff establishes a *prima facie* case, the burden of going forward shifts to the defendant to provide a legitimate, non-discriminatory reason for its employment action. HSBC satisfies that burden by providing evidence that Dimino was fired because his "negative comments regarding the company and [his] on-going legal action in [his] branch [was] reaching the point where [his] co-workers [were] finding [his] behavior disruptive." *Id.* Dimino repeatedly made inappropriate comments about his managers, referring to one as the "Devil." *See, e.g.*, HSBC 56.1 Ex. DD, 1/22/2010 Handwritten Notes by Hutter; HSBC Ex. FF, Hutter's Notes Regarding Instances of Negative Comments by Dimino.  Other HSBC employees felt threatened by Dimino. HSBC 56.1 Ex. FF, 1/22/2010 Hutter's Notes Regarding Instances of Negative Comments by Dimino. In addition, HSBC provided evidence that a second reason for Dimino's termination was his refusal to sign his 2009 Performance Objectives. HSBC 56.1 Ex. T, 1/18/2010 Email from Hutter.

### 3.  Dimino Fails to Establish Pretext as to his Retaliation Claims

Because HSBC has proffered legitimate, non-discriminatory reasons for firing Dimino, Dimino must establish that HSBC's reasons for firing him were pretextual. This is a burden which Dimino has failed to carry. Dimino was not insulated from termination due to his insubordinate and disruptive behavior merely because he filed a lawsuit in state court. As the Second Circuit observes: "An employer does not violate Title VII where it takes adverse

employment action against an employee to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work enterprise." *Matima v. Cellii*, 228 F.3d 68, 79 (2d Cir. 2000); *see also Buchanan v. Hilton Garden Inn Westbury*, No. 06 Civ. 3085, 2008 WL 858986, at *12 (E.D.N.Y. Mar. 31, 2008) (finding plaintiff's accusatory, confrontational and insubordinate complaints were not protected).

      Dimino responds that the alleged legitimate reasons for termination are pretextual because HSBC fails to offer contemporaneously recorded evidence that Dimino's discussions of his lawsuit disrupted the workplace. The argument that HSBC did not advise Dimino that his conduct was disruptive and did not do it right away, and that this proves pretext, borders on the absurd and does not square with a pretextual justification. *See Fagan v. N.Y. State Elec. & Gas Corp.* 186 F.3d 127, 134-35 (2d Cir. 1999). HSBC offers a wealth of evidence indicating that Dimino was extremely disruptive to HSBC through his negative comments about his supervisors, HSBC, and his lawsuit. *See, e.g.*, Dimino 56.1 Ex. DD, Handwritten Notes by Hutter 1/22/2010 (noting that Dimino called one of his supervisors the "devil"); Latini Dep. 112:21-113:25 (explaining that Dimino's supervisor complained that Dimino's behavior made her nervous and people in her branch felt threatened by him). Dimino also admits to calling his supervisor the "devil," but notes that this was done behind closed doors. Pl. Opp. 22. Finally, Dimino indicates that he had previously refused to sign his performance goals and had not been terminated. *Id.* None of this suggests that HSBC's reasons for terminating Dimino were pretextual: there is undisputed evidence that provides ample justification for terminating Dimino not because he engaged in a protected activity of filing a lawsuit, but rather because he was engaged in disruptive and insubordinate behavior, including his repeated refusal to sign his performance goals. Because there is no genuine issue of material fact as to whether HSBC's proffered reasons for termination were pretextual, summary judgment is granted in favor of HSBC on Dimino's claim of retaliation under the NYSHRL and NYCHRL.

### D. Breach of Implied-in-Law Contract

      Dimino's last claim is for breach of an implied-in-law contract, asserting that HSBC demoted him, failed to promote him, and terminated him because he refused to participate in illegal and/or unethical behavior, Compl. ¶ 21, by refusing to backdate his performance goals (or sign them). HSBC admits that one reason for firing Dimino was his refusal to sign his goals.

Under New York law, an employer can terminate an at-will employee for any reason unless there is an express agreement to the contrary. *Sabetay v. Sterling Drug*, 69 N.Y.2d 329, 333 (1987). Dimino asks that I expand the exception to this rule. In *Wieder v. Skala*, 80 N.Y.2d 628 (1992), the Court created an exception to New York's at-will doctrine for associate attorneys hired on an at-will basis by law firms. Courts have repeatedly declined to extend *Wieder* beyond the attorney context. *See e.g.*, *Plaintier v. Cordiant plc*, No. 97 Civ. 8696, 1998 WL 661474, at *2-*3 (S.D.N.Y. Sept. 24, 1998) (declining to apply to certified public accountant); *Sullivan v. Harnisch*, 915 N.Y.S.2d 514, 520 (App. Div. 2010) (declining to extend to COO and CCO/financial firm relationship). Accordingly, Plaintiff's allegations do not fit within the narrowly tailored *Wieder* exception to New York's employment-at-will doctrine, and I decline to broaden the exception to encompass the instant employment relationship. Summary judgment is granted in favor of HSBC on Dimino's claim for breach of an implied-in-law contract.

## III. CONCLUSION

The Court has considered the parties' remaining arguments and finds them without merit. HSBC's motion for summary judgment is GRANTED as to Dimino's retaliation claim and claim for breach of an implied-in-law contract and the motion is DENIED as to Dimino's claims for gender discrimination. The Clerk of the Court is instructed to close the motion and remove it from my docket.

**SO ORDERED.**

April 11, 2012
New York, New York

HAROLD BAER, JR.
United States District Judge

9